**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MALACHI FEAGINS,                          :                    Civil No. 06-5300 (RBK)

                Petitioner,              :

               v.                    :                    **OPINION**

MICHELLE RICCI, et al.,                   :

              Respondents.             :

_____:

**APPEARANCES:**

      MALACHI FEAGINS, #950068B
      New Jersey State Prison
      P.O. Box 861
      Trenton, New Jersey  08625
      Petitioner pro se

      JAMES F. SMITH, ASSISTANT PROSECUTOR
      JEFFREY S. BLITZ, ATLANTIC COUNTY PROSECUTOR
      P.O. Box 2002
      Mays Landing, New Jersey  08330
      Attorneys for Respondents

**KUGLER**, District Judge

      Malachi Feagins filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed.  Petitioner filed a Traverse, a motion for service of the record filed with the Answer, and a motion to supplement the record.  For the reasons expressed below, the Court will dismiss the Petition with prejudice, deny Petitioner's motions as moot and decline to issue a certificate of appealability.

# I. BACKGROUND

Petitioner challenges a judgment of conviction entered on March 29, 1996, in the Superior Court of New Jersey, Law Division, Atlantic County, after a jury convicted him of knowing or purposeful murder, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. After a bench trial, he was also found guilty of possession of a weapon by a convicted person. The Law Division sentenced Petitioner to an aggregate term of life plus five years, with a 30-year period of parole ineligibility. Petitioner appealed. In an opinion filed November 5, 1997, the Appellate Division of the Superior Court of New Jersey reversed and remanded the conviction for possession of a weapon by a convicted person, and affirmed the judgment of conviction in all other respects. See State v. Feagins, No. A-5858-95T4 slip op. (N.J. Super., App. Div., Nov. 5, 1997). On February 11, 1998, the Supreme Court of New Jersey denied certification. See State v. Feagins, 153 N.J. 50 (1998) (table).

On October 29, 1999, Petitioner filed his first petition for post-conviction relief in the Superior Court of New Jersey, Law Division. On February 28, 2001, the Law Division denied relief without an evidentiary hearing. Petitioner appealed, and on October 8, 2002, the Appellate Division affirmed the order denying post-conviction relief. See State v. Feagins, Docket No. A-3929-00T4 slip op. (N.J. Super., App. Div., Oct. 8, 2002). The New Jersey Supreme Court denied certification on March 18, 2003. See State v. Feagins, 176 N.J. 72 (2003) (table).

On April 19, 2003, Petitioner executed a second petition for post-conviction relief, supported by a pro se brief. The Law Division denied the petition for post-conviction relief by order filed January 23, 2004, and a letter opinion dated January 7, 2004. Petitioner appealed, and on June 13, 2006, the Appellate Division of the Superior Court of New Jersey affirmed. See

2

State v. Feagins, 2006 WL 1601686 (N.J. Super., App. Div. June 13, 2006).  On September 21,

2006, the New Jersey Supreme Court denied certification.  See State v. Feagins, 188 N.J. 356

(2006) (table).

> The Appellate Division set forth the underlying facts on direct appeal as follows:

> > According to the testimony of four eye-witnesses, defendant
> > fatally shot William Taylor on Ocean Avenue, Atlantic City, in
> > front of a group of onlookers.  Defendant and Taylor were both
> > drug dealers.  The confrontation between defendant and Taylor,
> > culminating in Taylor's murder, resulted from defendant's strong
> > objection to Taylor's selling drugs on Ocean Avenue, a location
> > that defendant regarded as his territory.

State v. Feagins, Docket No. A-5858-95T4 slip op. at p. 2 (N.J. Super., App. Div., November 5,

1997).

> Petitioner executed the Petition which is now before the Court on October 15, 2006.  The

Clerk received it on November 6, 2006.  The Court notified Petitioner of the consequences of

filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and

gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to

Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner asked the Court to rule on the Petition

as filed.  The Petition presents 14 grounds:

> > Ground One:  THE IMPROPER ADMISSION OF EVIDENCE
> > THAT DEFENDANT WAS A DRUG DEALER DENIED
> > PETITIONER A FAIR TRIAL.

> > Ground Two:  THE JUDGE'S FAILURE TO GIVE THE MODEL
> > CHARGE ON PRIOR INCONSISTENT STATEMENT[S] WAS
> > ERROR REQUIRING A REVERSAL OF PETITIONER'S
> > CONVICTIONS.

> > Ground Three:  THE TRIAL COURT'S FAILURE TO
> > INSTRUCT JURORS THAT BEFORE THEY COULD

3

CONSIDER PETITIONER'S ALLEGED OUT-OF-COURT
STATEMENTS TO BE CREDIBLE BEYOND A REASONABLE
DOUBT; AND ITS FAILURE TO CAUTION JURY AS TO
UNRELIABLE NATURE OF TESTIMONY ATTESTING SUCH
STATEMENTS DEPRIVED PETITIONER OF A FAIR TRIAL
AND DUE PROCESS RIGHTS UNDER V, VI, XIV AMENDS.
OF U.S. CONSTITUTION.

Ground Four:  THE TRIAL COURT'S INSTRUCTION ON
FLIGHT WAS INSUFFICIENT AND DEPRIVED PETITIONER
OF HIS DUE PROCESS RIGHTS TO A FAIR TRIAL IN
VIOLATION OF CONSTITUTIONAL AMENDMENTS V AND
XIV OF THE U.S. CONSTITUTION.

Ground Five:  THE INTRODUCTION OF A HEARSAY
STATEMENT OF A NON-TESTIFYING WITNESS WAS A
VIOLATION OF THE PETITIONER'S SIXTH AMENDMENT
CONSTITUTIONAL RIGHTS.

Ground Six:  PROSECUTOR KNOWINGLY USED FALSE
TESTIMONY WHICH DEPRIVED PETITIONER OF HIS DUE
PROCESS RIGHTS IN VIOLATION OF U.S. CONST. AMEND.
V AND XIV.

Ground Seven:  TRIAL COURT'S FAILURE TO GIVE SPECIAL
INSTRUCTION DRAWING JURY'S ATTENTION TO RISK
THAT WITNESS WHO HAS RECEIVED REDUCED
SENTENCE IN EXCHANGE FOR TESTIMONY WILL GIVE
FALSE TESTIMONY DEPRIVED PETITIONER OF DUE
PROCESS AND HIS FEDERAL CONSTITUTIONAL RIGHTS.

Ground Eight:  THE FAILURE OF THE TRIAL COURT TO
INSTRUCT THE JURY ON THE ALIBI DEFENSE WAS A
VIOLATION OF THE PETITIONER'S CONSTITUTIONAL
RIGHTS TO A FAIR TRIAL.

Ground Nine:  THE PROSECUTOR'S IMPROPER COMMENT
ON THE PETITIONER'S RIGHT TO SILENCE AND THE
DEFENSE WITNESSES' PRE-TRIAL SILENCE WAS A
VIOLATION OF PETITIONER'S V AND XIV AMENDMENT
CONSTITUTIONAL RIGHTS.

Ground Ten:  NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED THE PETITIONER OF HIS DUE PROCESS RIGHTS TO A FAIR TRIAL IN VIOLATION OF THE CONSTITUTIONAL AMENDMENTS V AND XIV.

Ground Eleven:  THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION.

Ground Twelve:  THE APPELLATE COURT'S MIS-STATEMENT OF FACTS AND GIVING CREDIBILITY TO THE TESTIMONY OF MARSHA COLLINS VIOLATED THE PETITIONER'S DUE PROCESS RIGHTS TO AN APPEAL THAT ACCORDS WITH DUE PROCESS.

Ground Thirteen:  APPELLATE COUNSEL'S FAILURE TO RAISE THE ISSUES SET FORTH IN DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS FIRST PETITIONER FOR PCR RELIEF AND ITS CUMULATIVE EFFECT WAS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

Ground Fourteen:  THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF PCR COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS OF THE U.S. CONSTITUTION.

(Pet. ¶ 12.A. - 12.N.)

The State filed an Answer seeking dismissal of the Petition on the merits.  Petitioner filed a Traverse, a motion to for an order directing Respondents to provide Petitioner with a copy of the record filed with the Answer, and a motion for an order directing Respondents to supplement the record with the informal and formal statements of Marsha Collins in order for him to reply to paragraph 12.A. of the Answer indicating that Respondents are unaware of any claims or evidence that the victim's killing resulted from "horseplay."

5

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[1]  Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[2]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits").  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.

On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2).

The grounds raised in the Petition are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

9

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[3]  Id. at 409-10.  "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly."  Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F. 3d 92, 100 (3d Cir. 2005)).

### III.  DISCUSSION

A.  Improper Admission of Evidence

In Ground One, Petitioner asserts that "THE IMPROPER ADMISSION OF EVIDENCE THAT DEFENDANT WAS A DRUG DEALER DENIED PETITIONER A FAIR TRIAL." (Pet. ¶ 12.A.)  As factual support, Petitioner states:

---

[3] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

Raised in two aspects:  initially, on direct appeal and then at the P.C.R. hearing.  The Judge conducted a N.J.R.E. 104 hearing and ruled that the testimony of witness Marsha Collins was admissible under N.J.R.E. 404(B) to show motive, but the State 1) failed to meet its burden to prove Collins' testimony of alleged motive by clear and convincing evidence, and 2) the other witnesses, the State in its opening argument, and the witness Collins herself - in her sworn taped statement stated that the motive for the shooting resulted from horseplay that resulted and escalated into a fight.

(Pet. ¶ 12.A., Supporting Facts.)

Petitioner raised this argument before the Appellate Division on direct appeal.  The

Appellate Division rejected the claim as follows:

[Defendant] asserts that Collins's testimony that defendant was a drug dealer should not have been admitted into evidence because a review of the testimony "demonstrates that the State failed to meet its burden to prove defendant's alleged drug dealing by clear and convincing evidence."  We disagree.  The clear import of Collins's testimony was that she knew that defendant and Taylor were drug dealers because, as a drug dealer herself in the same area, she had observed them selling drugs there.  The State argues that the foundation for this testimony was not developed at greater length because defendant's attorney purposely refrained from objecting on the ground of lack of a foundation because he knew that Collins could have testified to specific facts showing defendant's drug dealing, and defense counsel wished to avoid any further highlighting of his client's involvement in the sale of illegal drugs.

Because defendant did not attempt to elicit further foundation testimony either by a pertinent objection or by cross-examination, we decline to hold that the admission of Collins's testimony without additional foundation was plain error.  Furthermore, Collins's testimony did not result in an injustice to defendant because, even without her testimony, and Atlantic County jury would surely have inferred from the other evidence in the case that defendant and his victim were drug dealers and that the murder arose from a conflict over turf.

11

State v. Feagins, Docket No. A-5858-95T4 slip op. at pp. 4-5 (N.J. Super., App. Div. Nov. 5, 1997).

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). The admissibility of evidence is a question of state law which is not cognizable under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").

Moreover, this Court is not aware of any Supreme Court case clearly establishing that the admission of other crimes or bad acts evidence constitutes a violation of federal constitutional rights, and the most relevant Supreme Court cases suggest the contrary. See, e.g., Estelle v. McGuire, 502 U.S. 62 (1991) (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction). Because the admission of the testimony that Petitioner was a drug dealer was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground One.[4] See Minett v. Hendricks, 135 Fed. Appx. 547 (3d Cir. 2005)

---

[4] Petitioner filed two motions relating to Ground One, i.e., a motion seeking an order directing Respondents to serve a copy of the state court record, and a motion to supplement the

(continued...)

(rejecting claim that admission of "other crimes" evidence is contrary to or an unreasonable

application of clearly established Supreme Court precedent).

B.  Instructions

In Grounds Two, Three, Four, Seven and Eight, Petitioner asserts that the trial judge's

failure to instruct the jury on various points violated Due Process.  In Ground Two, Petitioner

asserts that "THE JUDGE'S FAILURE TO GIVE THE MODEL CHARGE ON PRIOR

INCONSISTENT STATEMENT WAS ERROR REQUIRING A REVERSAL OF

PETITIONER'S CONVICTIONS."  (Pet. ¶ 12.B.)  As factual support, Petitioner states:

> The witness (Collins) testified on cross-examination that it was not
> until after she had been sentenced to jail on drug charges did she
> tell police that she was witness to a shooting.  The witness (Shonta)
> testified on cross-examination that she told police shortly after the
> shooting, and that she thought another individual shot the victim.

(Pet. ¶ 12.B., Supporting Facts.)

In Ground Three, Petitioner asserts that "THE TRIAL COURT'S FAILURE TO

INSTRUCT JURORS THAT BEFORE THEY COULD CONSIDER PETITIONER'S

---

[4](...continued)
record.  In support of the first motion he states that "Respondents deny ¶ 12A of the petition and
state that they are unaware of any claims or evidence that the victim's killing resulted form
'horseplay' when in fact Marsha Collins made a sworn statement to this fact and now will
necessitate a request for Discovery under 28 U.S.C. § 2254 Rule 6 to forgo deference."
(Petitioner's Certification dated Feb. 16, 2007, ¶ 4.)  Petitioner also seeks an order to supplement
the record "to provide Petitioner with the informal and formal statements of Marsha Collins to
Reply to 12A of their Answer that they are unaware of any claims or evidence that victim's
killing resulted from 'horseplay.'"  (Motion for Discovery.)  In support of the second motion,
Petitioner states:  "The fact that the killing resulted from horseplay that escalated into an
altercation is present in the record and stated in Petitioner's PCR brief submitted by counsel and
petitioner requires the actual statement to cite from."  (Petitioner's Certification dated Feb. 16,
2007, ¶ 5.)  As this Court is dismissing Ground One because it presents a question of state law
and does not rise to the level of a due process violation, this Court will deny both motions as
moot.

ALLEGED OUT-OF-COURT STATEMENTS TO BE CREDIBLE BEYOND A

REASONABLE DOUBT; AND ITS FAILURE TO CAUTION JURY AS TO UNRELIABLE

NATURE OF TESTIMONY ATTESTING SUCH STATEMENTS DEPRIVED PETITIONER

OF A FAIR TRIAL AND DUE PROCESS RIGHTS UNDER V, VI, XIV AMENDS." (Pet. ¶

12.C.)  As factual support for Ground Three, Petitioner states that "[t]he witness Collins and

Taylor (Shonta) were allowed to testify to alleged out-of-court statements by Petitioner and the

Trial Court failed to instruct the Jury that they had to determine whether the statements were

credible and failed to alert the jury that such statements are inherently unreliable and must be

viewed with caution."  (Pet. ¶ 12.C., Supporting Facts.)

    In Ground Four, Petitioner argues that "THE TRIAL COURT'S INSTRUCTION ON

FLIGHT WAS INSUFFICIENT AND DEPRIVED PETITIONER OF HIS DUE PROCESS

RIGHTS TO A FAIR TRIAL IN VIOLATION OF CONSTITUTIONAL AMENDMENTS V

AND XIV OF THE U.S. CONSTITUTION."  (Pet. ¶ 12.D.)  As factual support for Ground Four,

Petitioner asserts that the instruction on flight was constitutionally deficient because it discussed

the testimony about Petitioner not being at the addresses where they looked for him, but failed to

mention the testimony of the same witnesses that they did not know if Petitioner resided at those

addresses.

    In Ground Seven, Petitioner asserts that "TRIAL COURT'S FAILURE TO GIVE

SPECIAL INSTRUCTION DRAWING JURY'S ATTENTION TO RISK THAT WITNESS

WHO HAS RECEIVED REDUCED SENTENCE IN EXCHANGE FOR TESTIMONY WILL

GIVE FALSE TESTIMONY DEPRIVED PETITIONER OF DUE PROCESS AND HIS

FEDERAL CONSTITUTIONAL RIGHTS."  (Pet. ¶ 12.E.)  As factual support for Ground

14

Seven, Petitioner asserts that, despite Marsha Collins' testimony denying the existence of an agreement with the state for her testimony against Petitioner, the trial judge violated due process by failing to instruct on the risk that a witness who has received a reduced sentence will testify falsely, because she admitted that she hoped to receive a reduced sentence.

In Ground Eight, Petitioner asserts that "THE FAILURE OF THE TRIAL COURT TO INSTRUCT THE JURY ON THE ALIBI DEFENSE WAS A VIOLATION OF THE PETITIONER'S CONSTITUTIONAL RIGHTS TO A FAIR TRIAL."  (Pet. ¶ 12.H.)  As factual support for Ground Eight, Petitioner states that "the alibi charge that the jury cannot convict because they do not believe the alibi - should have been given.  The jury foreman's stated reason to a reporter of the Atlantic City Press, for the guilty verdict was that the jury did not believe the alibi."  (Pet. ¶ 12.H., Facts.)

The government argues that these grounds involve state law and do not implicate the Constitution and, to the extent that they raise constitutional claims, due process does not require the claimed instructions.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Id.  As the Third Circuit explained,

In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. *See McMillan v. Pennsylvania,* 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Grounds Two, Three, Four, Seven and Eight because he does not point to a federal requirement that jury instructions must include the requested provisions, nor does he show that the absence of these instructions deprived him of a defense which federal law provided to him.  See Johnson, 117 F.3d at 111.  And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle, 502 U.S. at 71-72; see also Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply

challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").

Petitioner relies on United States v. Foutz, 540 F. 2d 733, 740 (4th Cir. 1976), and United States v. Hawkes, 753 F. 2d 355, 359 (4th Cir. 1985), in support of his claim in Ground Four that the instruction on flight was constitutionally deficient.  In Foutz, the United States Court of Appeals for the Fourth Circuit determined that on remand, evidence to demonstrate flight should be excluded because "[t]he inference that one who flees from the law is motivated by consciousness of guilt is weak at best."  Foutz, 540 F. 2d at 740.  In Hawkes, the Court of Appeals determined that "the trial court's instruction to the jury regarding intentional flight in this case was not adequately supported by the evidence in the record and constitutes reversible error."  Hawkes, 753 F. 2d at 359.  These cases are inapposite, however, because the rulings regarding flight were not constitutionally based.

Petitioner relies on United States v. Mason, 902 F. 2d 1434, 1438 (9th Cir. 1990), United States v. Zuniga, 989 F. 2d 1109, 1110-11 (9th Cir. 1990), and United States v. Washington, 819 F. 2d 221, 225 (9th Cir. 1987), to support his claim in Ground Eight that the failure to instruct on the alibi defense violated Due Process.  The Court of Appeals for the Ninth Circuit held in these cases that the "district court committed reversible error by refusing to instruct the jury on [defendant's] alibi defense [because a] defendant is entitled to an instruction concerning his [or her] theory of the case if it is supported by law and has *some foundation in the evidence*."  Zuniga, 989 F. 2d at 1110 (citations and internal quotation marks omitted); see also Washington, 819 F. 2d at 225 ("a defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak,

17

insufficient, inconsistent, or of doubtful credibility"). However, these holdings are not applicable to Petitioner's claims, as they were not constitutionally based. Moreover, the New Jersey courts' adjudication of Petitioner's claims involving instructions was not contrary to, or an unreasonable application of Supreme Court precedent. He is therefore not entitled to habeas relief based upon the failure to give the specified instructions.

C.  Prosecutorial Misconduct

Petitioner argues in Grounds Six, Nine and Ten that prosecutorial misconduct violated his right to Due Process. In Ground Six, he asserts that the "PROSECUTOR KNOWINGLY USED FALSE TESTIMONY WHICH DEPRIVED PETITIONER OF HIS DUE PROCESS RIGHTS IN VIOLATION OF U.S. CONST. AMEND. V AND XIV." (Pet. ¶ 12.F.) As factual support, he states:

> The State allowed his witness Collins to falsely testify that no promises of leniency had been given for her testimony. At the PCR hearing, the state argued that no agreements had been entered into by the State an[d] Collins, but there is no knowledge of her doing any prison time for the other two drug cases she had caught. At the least, the Trial Court should have granted an evidentiary hearing to fully resolve the matter.

(Pet. ¶ 12.F., Facts.)

Respondents argue that "Collins denied the existence of any such agreement, and petitioner's naked insistence that there really was such an agreement does not render any state court decision made in this matter contrary to clearly established federal law." (Respondents' Brief at p. 6.)

In Napue v. Illinois, 360 U.S. 264, 269 (1959), the principal state witness falsely testified that he had received no promise of consideration in return for his testimony and the prosecutor

did nothing to correct the witness's false testimony.  The Supreme Court held that the prosecutor's failure to correct the testimony which he knew to be false violated due process.  The Court emphasized that "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.  The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  Id.

In Miller v. Pate, 386 U.S. 1 (1967), the Supreme Court reversed the Court of Appeals' reversal of an order granting relief under § 2254 in a case involving the murder of a child where the prosecution presented false testimony that stains on a pair of men's underwear shorts were human blood and the shorts were an important link in the chain of circumstantial evidence against the petitioner.  Noting that it was established that counsel for the prosecution had known at the time of the trial that the shorts were stained with paint, the Supreme Court held that "the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the [prosecutor's] knowing use of false evidence."  Id. at 7.  However, this principle does not apply unless there is actual perjury.  See United States v. Coleman, 230 F. 2d 261 (3d Cir. 1956) (motion to vacate sentence on ground that prosecution presented perjured testimony was properly denied without a hearing where "there was no factual support offered for these allegations" other than what was considered at trial); United States v. Wolny, 133 F. 3d 758, 763 (10th Cir. 1998) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony") (citation and internal quotation marks omitted).

19

In this case, Petitioner has not shown that the testimony of Marsha Collins was perjured or that the prosecutor knowingly presented perjured testimony.  On direct appeal, the Appellate Division noted that Collins "had originally been sentenced to 364 days incarceration in the county jail, and that her sentence was ultimately reduced to probation without any jail time, presumably in return for her agreeing to testify.  As a result of testifying she hoped to receive consideration in sentencing on other drug cases pending against her."  State v. Feagins, Docket No. A-5858-95T4 slip op. at p. 3 (N.J. Super., App. Div., Nov. 5, 1997).  This Court finds that the rejection of Petitioner's prosecutorial misconduct claim alleging the knowing use of perjured testimony is not contrary to, or an unreasonable application of, Supreme Court precedent.  Thus, Petitioner is not entitled to habeas relief on Ground Six.

In Ground Nine Petitioner asserts that "THE PROSECUTOR'S IMPROPER COMMENT ON THE PETITIONER'S RIGHT TO SILENCE AND THE DEFENSE WITNESSES PRE-TRIAL SILENCE WAS A VIOLATION OF PETITIONER'S V AND XIV AMENDMENT CONSTITUTIONAL RIGHTS."  (Pet. ¶ 12.I.)  As factual support, Petitioner states:

> The prosecutor improperly questioned the Petitioner on cross-examination as to why the Petitioner did not give the police his exculpatory story when he knew petitioner had invoked his right to remain silent and also, improperly questioned the alibi witness on their Pre-trial silence without first laying the proper foundation for the admissibility of that line of questioning.

(Pet. ¶ 12.I., Facts.)

Respondents argue that Petitioner procedurally defaulted this claim and, citing Brown v. United States, 356 U.S. 148, 154-56 (1958), that the New Jersey courts' adjudication of the claim was not contrary to, or an unreasonable application of Supreme Court precedent.

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

The Fifth Amendment prevents a person from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Petitioner argues that the prosecutor violated the Fifth Amendment by cross-examining Petitioner as to why Petitioner did not tell his exculpatory story to police after Petitioner had invoked his Miranda rights.  If that were the case, then it would implicate Doyle v. Ohio, 426 U.S. 610 (1976).  In Doyle, the Supreme Court held that a prosecutor's use of postarrest silence "to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest . . . violates due process." Id. at 611.[5] This Court has carefully reviewed the transcript of Petitioner's cross-examination, and concludes that no such question was asked.  Rather, after Petitioner testified on cross-examination that his friends had told him that the police were looking for him, the prosecutor asked Petitioner "why . .

---

[5] See also Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) ("[T]he standard for determining whether habeas relief must be granted is whether the Doyle error had substantial and injurious effect or influence in determining the jury's verdict") (citation and internal quotation marks omitted).

21

. didn't you bring all the [alibi witnesses] down to the police station and say here I am and I have all the alibi witnesses?"  State v. Feagins, Indictment No. 95-04-0866-C trial transcript at 60-21 to 60-23 (N.J. Super., Law Div., Feb. 26, 1996).  In response, Petitioner testified, "I was just thinking they catch up with me, whenever they catch up with me."  Id. at 60-24 to 60-25.

Because the prosecutor did not use Petitioner's post-Miranda warning silence to impeach him, Doyle is not implicated, and the New Jersey courts' adjudication of this due process claim was not contrary to, or an unreasonable application of Supreme Court precedent.  See Jenkins v. Anderson, 447 U.S. 231 (1980) (where prosecutor questioned defendant about prearrest silence and noted in closing that defendant had waited two weeks before he did anything about surrendering himself, Court held that due process is not violated by the use of prearrest silence to impeach a criminal defendant's credibility); see also Fletcher v. Weir, 455 U.S. 603, 607 (1982) (holding that post-arrest silence may be used to impeach exculpatory testimony where no Miranda warnings given; "In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand").

In Ground Ten, Petitioner argues that "NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED THE PETITIONER OF HIS DUE PROCESS RIGHTS TO A FAIR TRIAL IN VIOLATION OF THE CONSTITUTIONAL AMENDMENTS V AND XIV."  (Pet. ¶ 10.)  As factual support, he states:

> The Prosecutor denigrated defense counsel and the alibi defense; elicited testimony about Petitioner's invocation of his Fifth Amendment Right to silence and defense witnesses Pre-trial silences; vouched for the credibility of State's witnesses; argued evidence that was outside of the record; intentionally misleading

the jury with inaccurate factual assertions; improperly used prior convictions; introduced inadmissible testimony that Petitioner was a drug dealer; called victim's mother to testify to invoke sympathy from the jury; and introduced out of court Hearsay statements of Sherwood Cross by his witness Collins, and of Billy Murphy by the prosecutor himself.

(Pet. ¶ 10, Facts.)

Petitioner presented these claims in his first petition for post-conviction relief. The Appellate Division held that the claims were procedurally barred because Petitioner did not present them on direct appeal. See State v. Feagins, Docket No. A-3939-00T4 slip op. at 4 (N.J. Super., App. Div., Oct. 8, 2002) ("The arguments raised concerning . . . prosecutorial misconduct could reasonably have been raised on direct appeal. They are, therefore, barred from being raised here. R. 3:22-4"). The New Jersey Supreme Court denied certification.

"The [procedural default] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, that state judgment rests on independent and adequate procedural grounds." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Under the procedural default rule, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989); see also Villot v. Varner, 373 F. 3d 327, 332 (3d Cir. 2004); Cabrera v. Barbo, 175 F.3d 307, 312-14 (3d Cir. 1999).

The "cause" standard requires a petitioner to show that some external objective factor impeded his or her efforts to comply with the state procedural bar.  See Murray v. Carrier, 477 U.S. 478, 485-86 (1986) (neither a pro se prisoner's ignorance of the procedural rule nor attorney ignorance or inadvertence satisfies the cause standard); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992) (failure of the state court to "bend the rules"for a pro se litigant is not cause).  Cause can be established by showing, for example, that the factual or legal basis for a claim was not reasonably available to counsel or that government interference made compliance with the procedural rule impracticable.  See Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) (noting that "cause" typically involves a novel constitutional rule, a new factual predicate, hindrance by the state court in complying with the procedural rule, or constitutionally ineffective counsel).  A fundamental miscarriage of justice generally "requires a petitioner to establish 'actual innocence' by proving 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  Slutzker v. Johnson, 393 F.3d 373, 381 n.7 (3d Cir. 2004) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Petitioner argues in his Traverse that he did not procedurally default these claims. (Traverse at pp. 16-17.)  He does not claim that the "cause and prejudice" or "fundamental miscarriage of justice" exceptions excuse the procedural default.  Specifically, he contends:

> Respondents incorrectly assert that Petitioner's claims are procedurally barred.  Fourteen claims are before the Court, only 5 were raised during the second PCR.  Respondents incorrectly assert that this Court should now reject his entire petition.  However, even those claims that Respondents assert should be barred, should be accepted.
>
> Respondents' Answer infuses the court with State rules barring Federal consideration but fails to mention the "Exceptions" or

> Exception To End All Exceptions indicated in <u>Precoise</u> that when
> push comes to shove, claims should be considered on the merits.
> Moreover, the <u>first</u> PCR Judge failed to sign the Order required to
> proceed with Appellate review for over a year, and Petitioner
> should not be have to pay the exacting price . . . .  Moreover, as
> stated in <u>Villot v. Varner</u>, [373] F. 3d 327, 336 (3d Cir. 2004),
> habeas review is not precluded because state court refused to
> review lower court's decision that addressed procedurally barred
> claims on the merits.

(Traverse at p. 17.)

Petitioner relies on <u>Villot v. Varner</u>, but that case does not support Petitioner.  The United

States Court of Appeals for the Third Circuit held in <u>Villot</u> that a petitioner's noncompliance

with state procedural rules does not support a finding of procedural default where the state court

did not rely on these grounds. "If the state court does not actually enforce the procedural rule in

question, the 'federal court implies no disrespect for the state by entertaining the claim.'" <u>Villot</u>,

373 F. 3d at 336 (quoting <u>County Court of Ulster County, N.Y. v. Allen</u>, 442 U.S. 140, 154

(1979)).  Unlike <u>Villot</u>, the last state court to consider Petitioner's prosecutorial misconduct

claims (the Appellate Division) held that the claims were procedurally barred because Petitioner

could have raised them on direct appeal.  This Court will not entertain Petitioner's prosecutorial

misconduct claims in Ground Ten because he procedurally defaulted the claims and has not

shown "cause and prejudice" or a fundamental miscarriage of justice.

<u>D.  Confrontation Clause</u>

Petitioner argues in Ground Five that "THE INTRODUCTION OF A HEARSAY

STATEMENT OF A NON-TESTIFYING WITNESS WAS A VIOLATION OF THE

PETITIONER'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT."  (Pet. ¶ 12.E.)  As

factual support, he alleges:

> During closing summations the Prosecutor introduced a hearsay
> statement of Billy Murphy, who did not testify at the trial, to
> challenge the truthfulness of Petitioner's Alibi Defense.  It was
> offered to the jury as if Billy Murphy was a defense witness who
> testified contradicting the other defense witnesses concerning the
> time-line when they learned the victim had been shot.

(Pet. ¶ 12.E., Facts.)

Respondents argue that Petitioner is not entitled to habeas relief on Ground Five because

the prosecutor's mistaken reference in his closing argument to the testimony of Billy Murphy

(who did not testify), instead of Brian Walker (who did testify), was not contrary to, or an

unreasonable application of Supreme Court precedent involving the Confrontation Clause.

Specifically, Respondents assert:

> In his fifth claim, petitioner seeks to avail himself of a fleeting
> instance during which the prosecutor obviously misspoke during
> trial.  Petitioner testified during his trial and told jurors that, inter
> alia, he was with one Brian Walker and one William Murphy, in a
> friend's house, when his victim was shot on the street.  (4T44-3 to
> 25).  Walker testified on petitioner's behalf and, in some respects,
> contradicted testimony given by the friend in whose house he
> allegedly was with petitioner and Murphy at the time petitioner's
> victim was shot.  The prosecutor pointed this out during his
> summation, but in doing so, he mistakenly referred to Walker as
> Murphy.  (5T43-3 to 17).  This mistake was obvious, though, and
> certainly could not have misled jurors to believe they heard
> testimony from Murphy when it was Walker who testified the day
> before.  In making this mistake, the prosecutor certainly did not run
> afoul of any clearly established federal law known to respondents
> or cited by petitioner.

(Respondents' Brief at p. 5-6.)

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the

witnesses against him."  U.S. Const. amend. V.  This guarantee applies to both federal and state

prosecutions.  See Pointer v. Texas, 380 U.S. 400 (1965).

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination." Id. at 53-54; see also Davis v. Washington, 126 S. Ct. 2266, 2273 (2006). However, under the law in effect at the time of Petitioner's crime and conviction, the Supreme Court had held that the Confrontation Clause did not bar admission of testimonial hearsay against a criminal defendant if the statement had adequate indicia of reliability, i.e., fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66 (1980).

Petitioner is not entitled to habeas relief on his Confrontation Clause claim. The Confrontation Clause is not implicated by misstatements in the prosecutor's closing argument, as the closing argument does not constitute testimony or evidence. See United States v. Sandini, 888 F. 2d 300, 311 (3d Cir. 1989) (attorney's remarks in closing argument did not implicate Confrontation Clause, which is directed toward preserving a defendant's right of cross-examination, "because the arguments of counsel are simply not evidence"); cf. Zafiro v. United States, 506 U.S. 534, 541 (1993) (observing that instruction stating that opening and closing arguments are not evidence was proper).

To the extent that Petitioner asserts that the prosecutor's misstatement violates Due Process, Petitioner is also not entitled to habeas relief. In Donnelly v. DeChristoforno, 416 U.S. 637 (1974), the prosecutor commented on the state criminal defendant's motives in standing trial, stating "I quite frankly think that [defendant and counsel] hope that you find him guilty of something a little less than first-degree murder." Id. at 640. Petitioner brought a § 2254 petition

27

claiming that the prosecutor's remarks denied Due Process, and the Supreme Court rejected the

claim on the ground that the prosecutor's comment did not make the "trial so fundamentally

unfair as to deny him due process." Id. at 645.  Because the prosecutor's mistaken use of the

name "Billy Murphy" (who did not testify) instead of "Brian Walker" (who did testify) did not

"so infect[] the trial with unfairness as to make the resulting conviction a denial of due process,"

id. at 645, Petitioner is not entitled to habeas relief on Ground Five.

E.  Misstatement of Facts by Appellate Division

In Ground Twelve, Petitioner asserts that "THE APPELLATE COURT'S MIS-

STATEMENT OF FACTS AND GIVING CREDIBILITY TO THE TESTIMONY OF

MARSHA COLLINS VIOLATED THE PETITIONER'S DUE PROCESS RIGHTS TO AN

APPEAL THAT ACCORDS WITH DUE PROCESS."  (Pet. ¶ 12.I.)  As factual support,

Petitioner asserts:

> The Appellate Court, in denying relief at direct appeal, backed
> their decision up with erroneous pretense when they stated,
> "furthermore, Collins's testimony did not result in an injustice to
> Defendant because, even without her testimony, an Atlantic
> County Jury would surely have inferred from the other evidence in
> the case that defendant and his victim were drug dealers and that
> the murder arose from a conflict over turf."  This was erroneous
> because with the proper review of the record/transcripts, if you take
> Collins testimony out of the equation, there is no testimony about
> drug dealers or a drug turf war.

(Pet. ¶ 12.L., Facts.)

Respondents argue that habeas relief is not warranted on Ground Twelve because it "does

not implicate any clearly established federal law known to respondents or cited by petitioner."

(Respondents' Brief at p. 7.)

"The Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions." Halbert v. Michigan, 545 U.S. 605, 610 (2005); see also Evitts v. Lucey, 469 U.S. 387 (1985) ("the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors"). "Nonetheless, if a State has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts, 469 U.S. at 393 (citation and internal quotation marks omitted). The Fourteenth Amendment guarantees "a criminal appellant pursuing a first appeal as of right [the] minimum safeguards necessary to make that appeal adequate and effective." Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)). "A State's procedure provides such review so long as it reasonably ensures that an . . . appeal will be resolved in a way that is related to the merit of that appeal." Smith v. Robbins, 528 U.S. 259, 276, 77 (2000). For example, in Griffin, 351 U.S. at 20, the Supreme Court held that a State must provide an indigent criminal defendant with a free transcript where a transcript is required to afford "adequate and effective appellate review to indigent defendants." In Evitts, 469 U.S. at 396, the Supreme Court held that "[a] first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."

Contrary to Petitioner's claim, Due Process does not require appellate factfinding to be correct. "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account." In re Winship, 397 U.S. 258, 364 (1970) (quoting Speiser v. Randall, 357 U.S. 513, 525 (1958)). "In defining the process necessary to ensure 'fundamental

fairness' we have recognized that the [Due Process] Clause does not require that 'the procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error.'"  Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 320 (1985) (quoting Mackey v. Montrym, 443 U.S. 1, 13 (1979)).  "The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations."  Mackey, 443 U.S. at 13.  Petitioner is not entitled to habeas relief on Ground Twelve because the rejection of the claim was not contrary to, or an unreasonable application of Supreme Court precedent.

F.  Ineffective Assistance of Counsel

Petitioner asserts in Ground Eleven that "THE PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION."  (Pet. ¶ 12.K.)  As factual support, Petitioner alleges deficient performance as follows:

> Counsel failed to request a jury charge on the alibi defense or object to the omission of the charge by the Trial Court; failed to object to Petitioner and his alibi witnesses being improperly questioned about their pre-trial right to silence; failed to object to the prosecutor introducing a hearsay statement of Billy Murphy, a non-testifying witness; failed to object to prosecutor calling the victim's mother as a witness to elicit sympathy; failed to request a reliability hearing on the prior inconsistent statements of witnesses Collins and Taylor or request a jury instruction on the prior inconsistent statements; failed to object to the out-of-court Hearsay statement of Sherwood Cross testified to by Collins; failed to object to the insufficient jury charge on flight.

(Pet. ¶ 12.K., Facts.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In this case, the Appellate Division rejected Petitioner's ineffective assistance of trial counsel claims on the ground that the alleged deficiencies of counsel did not prejudice the outcome. Specifically, the Appellate Division found:

> We addressed these issues on direct appeal . . . . Likewise, although we determined that the mother's testimony should not have been presented, we nonetheless concluded that it was not given in a "particularly inflammatory manner" and did not constitute plain error because of the "strong case against defendant." Thus, our holding on direct appeal precludes defendant from meeting the second-prong of the ineffective

> assistance of counsel test that the challenged testimony would
> probably have changed the result. <u>Strickland v. Washington</u>, 466
> U.S. 668, 694 . . . (1984).

<u>State v. Feagins</u>, Docket No. A-3929-00T4 slip op. at pp. 3-4 (N.J. Super., App. Div., Oct. 8, 2002).

This Court finds that the rejection of Petitioner's ineffective assistance of trial counsel claims by the New Jersey courts was not contrary to, or an unreasonable application of <u>Strickland</u> and its progeny. Thus, Petitioner is not entitled to habeas relief on Ground Eleven.

Petitioner asserts in Ground Thirteen that he was denied the effective assistance of counsel on direct appeal because appellate counsel failed to raise the issues Petitioner subsequently presented in his first petition for post-conviction relief. Specifically, he asserts that "APPELLATE COUNSEL'S FAILURE TO RAISE THE ISSUES SET FORTH IN DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS FIRST PETITIONER FOR PCR RELIEF AND ITS CUMULATIVE EFFECT WAS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION." (Pet. ¶ 12.M.)

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" <u>Evitts v. Lucey</u>, 469 U.S. 387, 392 (1985) (quoting <u>Griffin v. Illinois</u>, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, <u>Evitts</u> at 396. The ineffective assistance of counsel standard of <u>Strickland</u>, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>United States v. Cross</u>, 308 F.3d 308, 315 (3d Cir. 2002). Defense counsel has a constitutionally imposed duty to consult with the

defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  The term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega at 478.

The alleged failure to consult with Petitioner is based on counsel's failure to present certain claims on direct appeal.  However, "it is a well established principle that counsel decides which issues to pursue on appeal." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288.

Under these circumstances, Petitioner cannot show that the adjudication of his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, Strickland and its progeny.  See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

33

G.  Ineffective Assistance of PCR Counsel

In Ground Fourteen, Petitioner asserts that the attorney who represented him in his first state petition for post-conviction relief was constitutionally ineffective.  (Pet. ¶ 12.M., 12.N.)  Ground Fourteen relates solely to the deficient performance of post-conviction relief counsel.  However, the alleged ineffectiveness of counsel on post-conviction relief is not cognizable under § 2254.  See 28 U.S.C. § 2254(i).  Section 2254(i) provides:  "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Because Ground Fourteen concerns only the ineffectiveness of post-conviction relief counsel, a claim that is not cognizable under § 2254, Petitioner is not entitled to habeas relief on Ground Fourteen.

H.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice, denies Petitioner's motions, and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


s/Robert B. Kugler
**ROBERT B. KUGLER, U.S.D.J.**


DATED:     August 27    , 2007

34